IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAUL RONALD GWAZDAVSKAS,  )  <br>    Plaintiff,                )  <br>                             )  <br> v.                          )  <br>                             )  <br> BRANDON THARP, *et al.,*     )  <br>    Defendants.              )  | Civil Action No. 7:19-cv-00426  <br><br>By: Elizabeth K. Dillon  <br>    United States District Judge |

## MEMORANDUM OPINION

Plaintiff Paul Ronald Gwazdavskas, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. His claims arise from a September 12, 2018 traffic stop, during which he was uncooperative and subsequently fled. His fleeing led to what he describes as a "low-speed chase," followed by his arrest. In his amended complaint, he names two defendants: Officer Brandon Tharp of the Louisa County Sheriff's Office, who initiated the traffic stop, and Schienschang, a deputy with the Orange County Sheriff's Office, who assisted in pursuing plaintiff and arresting him.

Pending before the court is defendants' motion to dismiss (Dkt. No. 33). Plaintiff has filed a response in opposition (Dkt. No. 35), defendants have filed a reply (Dkt. No. 38), and the motion is ripe for disposition.[1] For the reasons set forth herein, the court will grant defendants' motion to dismiss the remaining claims and dismiss this case without prejudice.

---

[1] After defendants filed their reply, plaintiff filed a thirty-page document that has been docketed as "Additional Evidence." The document contains various forms and notices, including a "Legal Notice" directed toward the state circuit courts in which he was convicted, a "Notice of Trespass," and a "Bill of Lading" directed to this court. (Dkt. No. 39 at 1, 8.) Overall, plaintiff appears to be asking for certain records from the state court, and he states that the request is being sent to this court as "evidence." (*Id.* at 3.) The filing also includes a number of documents that appear to be offered as proof of damages (*id.* at 12–21, 25–30) and other documents consisting of letters from courts and court orders, which have been crossed out and "Void" written on them (*id.* at 22–24). First of all, the court declines to consider these materials, which are not part of the pleadings, in ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Moreover, the document is largely—if not entirely—irrelevant and not responsive to the motion to dismiss. In any event, to the extent that it is at all coherent and addresses the issues

I.  BACKGROUND

In his amended complaint, plaintiff alleges that, during a September 12, 2018 traffic stop, when he was stopped by defendant Tharp, plaintiff "gave written and verbal notice that [he] was standing on [his] right to remain silent," but Tharp "continued to question him over and over." (Am. Compl. 2, Dkt. No. 21.)[2]  He further alleges that Officer Tharp refused to provide a business card identifying himself and refused to allow plaintiff to call 911 or talk to a supervisor. Tharp also did not give plaintiff a ticket or show a warrant.  Instead, Tharp demanded that plaintiff exit his truck.  Because plaintiff was "in duress" and feared death or harm, he refused to exit the vehicle and refused to engage, other than informing Tharp that Tharp was trespassing. (*Id.* at 4.)  At that point, Tharp "threatened harm" and then "attempted to break out a window" of plaintiff's truck with his baton.  (*Id.*)  Plaintiff states that he was "in fear of life and injury," and so he fled the scene.  (*Id.*)

This led to a vehicle pursuit (described by plaintiff as a "low speed chase") by Tharp, who was joined by Schienschang, apparently in a separate vehicle, and other unnamed officers. Schienschang's vehicle collided with plaintiff's truck several times, causing damage to both vehicles, although plaintiff's complaint does not indicate how the collision occurred or if Schienschang purposefully collided with his truck.  Once plaintiff was stopped, Schienschang

---

raised in the motion to dismiss, the court declines to consider it because it is an impermissible sur-reply and plaintiff did not seek leave to file it.

[2] Specifically, plaintiff states that he provided Tharp with a "passport that requests safe and unmolested passage" and a "contract" with a "reservation of rights and notice that no questions will be answered." (Am. Compl. 3.)  Based on all of plaintiff's filings, it appears that his conduct toward Tharp and belief that he need not respond to inquiries of law enforcement officers during a traffic stop is based on a species of "sovereign citizen" argument.  As noted previously in this case, "Self-proclaimed 'sovereign citizens' 'believe they have special rights and often object to jurisdiction on . . . unfounded grounds.'" (Dkt. No. 19 at 4 n.1. (quoting *Rosser v. Carson*, No. 7:19CV00156, 2019 WL 1474009, at *2 n.2 (W.D. Va. Apr. 3, 2019), *aff'd*, No. 19-6682, 777 F. App'x 689 (4th Cir. Sept. 27, 2019)).  Courts, including this one, have recognized those arguments as frivolous.  *See, e.g., Rosser, supra*; *United States v. Glover*, 715 F. App'x 253, 255 & n.2 (4th Cir. 2017).

struck and shattered the truck's window and ordered plaintiff out.  Plaintiff states that after he complied with the order to exit and kneel on the ground, "excessive force by assault by Officers" occurred, resulting in plaintiff suffering from a strained back, scraped legs, and a hernia to his side.  (*See* Am. Compl. 4.)  No additional details are provided as to the "excessive force" used.  The complaint also asserts that the two defendants swore out ten "false charges" against plaintiff before a magistrate judge the following day.  (*Id.*)

According to publicly available court documents,[3] plaintiff was charged with a number of offenses in Louisa County Circuit Court and Orange County Circuit Court as a result of the September 12, 2018 events.[4]  A few charges were nolle prossed.  Ultimately, in Louisa County, he pled guilty to two offenses and was sentenced for both on June 17, 2019.  First, in case CR19000005-01, he pled guilty to a felony charge of eluding police or disregarding a signal to stop, in violation of Virginia Code § 46.2-817(B).  Among other penalties, he was sentenced to twelve months in jail, with no time suspended.  Second, in case CR19000030-03, he pled guilty to the offense of driving without a license, in violation of Virginia Code § 46.2-300, and was sentenced to a $500 fine and $263 in costs.

In Orange County, he proceeded to a jury trial on two separate charges.  He was found not guilty of assault on a law enforcement officer but was found guilty of destruction of property valued at more than $1000, in violation of Virginia Code § 18.2-137, for which he was sentenced to 14 days.

---

[3] *See* Fed. R. Evid. 201(b)(2) (permitting a federal court to take judicial notice of certain facts); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (explaining that a federal court may take judicial notice of state court proceedings that directly relate to the issues pending in the federal court).

[4] Court records are not consistent in the spelling of plaintiff's name.  In Louisa County, his name was spelled "Gwazdauskas."  In Orange County, the charges were brought against "Paul Arnold Gwazdauskas a.k.a. Paul Arnold Gwaz."  There is no reasonable suggestion that plaintiff is not the individual who was charged.

3

The Court of Appeals of Virginia denied his petitions for appeal as to all judgments, both in Louisa County and Orange County. *Gwazdauskas v. Commonwealth*, No. 109619-2 (Va. Ct. App. Apr. 24, 2020) (Louisa); *Gwazdauskas v. Commonwealth*, No. 070419-2 (Va. Ct. App. Dec. 19, 2019) (Orange). He then filed petitions for appeal from both decisions, and his petitions remain pending before the Supreme Court of Virginia. *Gwazdauskas v. Commonwealth*, Nos. 191739, 200576 (Va.).[5]

## II. DISCUSSION

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

Defendants contend that the amended complaint should be dismissed against both defendants. As to Tharp, they point out that "the facts alleged indicate there was a lawful traffic stop, in which the plaintiff violated statutory duties to produce documents, he was therefore detained beyond the initial traffic stop, failed to respond to Tharp's lawful orders, and

---

[5] He also filed a petition for mandamus and a petition for writ of habeas corpus in the Supreme Court of Virginia (Case Nos. 191029 and 191086); those cases were dismissed.

subsequently fled." As to Schienschang, they claim that the complaint fails to state a claim because plaintiff "describes nothing more than a chase resulting in his felony arrest." (Mem. Supp. Mot. Summ. J. 2, Dkt. No. 33.)

Plaintiff's response to the motion to dismiss is a twenty-page rambling statement, full of references to sovereign citizen-type arguments. (*See supra* note 2.) These include a statement of his overall belief system from which many of his other assertions flow: that he lives as a "private" person and "refuses to comply and consent with government agents that wish to trespass on his privacy." He goes on to complain about things that have happened while imprisoned, such as his "image" being "taken from him thousands of times" during incarceration against his will and his DNA being taken from him. He alleges he is "foreign" to the Commonwealth of Virginia and then contends he is entitled to sovereign immunity as a foreign entity, and makes other similar claims. Part of his document is titled as a Complaint, and he lists other counts of Trespassing (against Tharp) and malicious prosecution, but he has not sought leave to amend and has not filed an amended complaint.

Moreover, although plaintiff includes some additional factual allegations in his response, it is well-established that a party may not amend its pleadings through briefing. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Accordingly, the court does not treat those allegations as part of the amended complaint. *See id.*

**B. On the Current Record, the Court Cannot Conclusively Determine Whether *Heck v. Humphrey* Bars Any of Plaintiff's Claims.**

Although defendant has not moved for dismissal on the basis that plaintiff's claims are subject to the bar set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), the court considers the issue. *Heck* precludes a § 1983 claim that would "necessarily imply the invalidity of [the

5

plaintiff's] conviction or sentence," because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486–87. Instead, "habeas corpus is the appropriate remedy" for a state prisoner to challenge his conviction. *Id.* at 482.

*Heck* thus held that if granting relief on a civil claim, such as a false arrest or malicious prosecution claim, would necessarily call into question the validity of the criminal judgment for which the plaintiff is confined, then the civil case cannot proceed unless the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486–87.

For *Heck* to apply and bar a plaintiff's § 1983 claim, then, two requirements always must be met: (1) a judgment in favor of the plaintiff must necessarily imply the invalidity of the plaintiff's conviction or sentence; and (2) the claim must be brought by a claimant who is either (a) currently in custody or (b) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015) (citations and alterations omitted).

**1.** ***Heck*** **may bar claims arising from the traffic stop through the subsequent chase.**

The court first notes that plaintiff's conviction for felony eluding the police is clearly based on his fleeing the traffic stop. Thus, any ruling that any part of the initial traffic stop or Tharp's conduct violated the Fourth Amendment would necessarily call into question his conviction for that offense. Moreover, plaintiff has not shown that his conviction was reversed, expunged, set aside, or otherwise called into question, and court records indicate otherwise.

Nonetheless, based on the current record,[6] the court cannot conclude that *Heck* bars any of plaintiff's claims. First, *Heck* would not apply if plaintiff is no longer in custody on the eluding charge and the federal habeas remedy was unavailable to him. As explained by the Fourth Circuit, "because federal habeas suits may be filed only by individuals who are 'in custody,' . . . petitioners with short sentence might find their claims moot before they could prosecute them." *Griffin v. Baltimore Police Dep't.*, 804 F.3d 692, 696 (4th Cir. 2015). Thus, a plaintiff who is no longer in custody but "could not, as a practical matter, [have sought] habeas relief" while in custody, may bring a § 1983 claim that would otherwise be barred by *Heck*. *Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008); *Covey*, 777 F.3d at 197 (explaining that the exception recognized in *Wilson* applies only if a petitioner could not have "practicably sought habeas relief while in custody"). Based on the current record and his address of record, it appears that plaintiff is still in jail. But it is not clear whether he is in custody on the eluding police charge or some other charge. Also, he continues to pursue his direct appeals and has not yet exhausted his claims. Thus, it is entirely unclear whether the plaintiff's situation overcomes the *Heck* bar on the basis that he is not in custody on the relevant charge and had insufficient time to exhaust, such that federal habeas was unavailable to him. Accordingly, the court instead addresses the alleged claims against Tharp arising from the traffic stop to see if they state a claim if not barred by *Heck*. *See infra* Section II.C.

### 2. *Heck* likely does not bar excessive force claims against Schienschang or others.

As to any excessive force claim against Schienschang or others arising from the chase or in conjunction with his subsequent arrest, it appears (at least based on the sparse allegations in

---

[6] The determination of whether plaintiff's claims are barred by *Heck* is complicated by plaintiff's failure to clearly identify exactly what his claims are and the lack of detailed allegations in his complaint, as well as the fact that no party has identified the underlying factual basis for his convictions.

7

the complaint), that any such claim would not be barred by *Heck*. *See Riddick v. Lott*, 202 F. App'x 615, 617 (4th Cir. 2006) ("*Heck* does not bar § 1983 actions alleging excessive force despite a plaintiff's [charge] for resisting arrest because a state court's finding that [a plaintiff] resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue [the plaintiff].") In *Riddick*, the court explained that if the excessive force caused the plaintiff to engage in the conduct undergirding his conviction for resisting arrest, then his claim would be barred by *Heck* because "a person cannot be found guilty of resisting arrest if he is simply protecting himself, reasonably, against an officer's unprovoked attack or use of excessive force." *Id.* at 616. If, however, the excessive force "occurred, independently, either before the plaintiff resisted arrest, or after his resistance had clearly ceased," then it would not be barred by *Heck*. *Id.* Moreover, to make the determination of whether his claims necessarily would imply the invalidity of his sentence "requires a close factual examination of the underlying conviction." *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir.2006), (citing *Heck*, 512 U.S. at 487 n. 7); *see Ballenger v. Owens*, 352 F.3d 842, 846-47 (4th Cir.2003).

The Court lacks a record sufficient to make a "close factual examination" of whether plaintiff's success on any of his claims against Schienschang would necessarily imply the invalidity of his conviction. Thus, at this point in the case and on this "sparse" record, *see Riddick*, 202 F. App'x at 616, the court cannot say that any excessive force claims during the chase or immediately afterward are barred by *Heck*. Thus, such claims are addressed separately in Section II.D. below.

**C. Plaintiff Fails to Allege a Fourth Amendment Violation As To Defendant Tharp.**

Plaintiff's claims related to the stop and chase fail to allege a Fourth Amendment violation by Tharp, for substantially the reasons set forth in the motion to dismiss and discussed briefly next.

Both a claim that the stop itself was illegal or unreasonable and any claim that Tharp used excessive force or acted unreasonably during the traffic stop are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir.2011) ("The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of 'seizures effectuated by excessive force.'"); *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).

Because the test is one of "objective reasonableness," the officer's underlying intent or motivation is not relevant. *Graham*, 490 U.S. at 397 (explaining that courts determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation"). Instead, the court asks "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996).

This objective standard is "not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), but instead "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. In applying this objective standard, the court must "weigh 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir.2003) (quoting *Graham*, 490 U.S. at 396).

Applying those principles here, it is worth noting that plaintiff's amended complaint does not allege that the traffic stop was improper or that he did not commit a traffic violation.[7] In the course of a lawful traffic stop, moreover, an officer has authority for the seizure until the "tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Ordinary tasks incident to a traffic stop include "inspecting a driver's identification and license to operate a vehicle, verifying the registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants." *United States v. Hill*, 852 F.3d 377, 382 (4th Cir. 2017). Notably, as a result of plaintiff's complete refusal to cooperate, Tharp was never able to complete *any* of those tasks, and thus the stop remained lawful. Instead, plaintiff simply alleges that he provided Tharp with a "passport card" requesting "safe passage" and a card invoking his right to remain silent.

Moreover, the Supreme Court has squarely held that no Fourth Amendment violation occurs when, during the course of a lawful traffic stop, a law enforcement officer asks the driver of the vehicle to step out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Clearly, then, Tharp did not violate the Fourth Amendment in asking plaintiff to get out of his vehicle.

To summarize, through this point of the stop, plaintiff had been uncooperative in answering questions and had refused to present his driver's license or registration. By plaintiff's

---

[7] Plaintiff alleges that Tharp activated his "emergency" lights when there was no "emergency" (Am. Compl. 3), but there need not be an "emergency" for a traffic stop to be lawful. The complaint does not otherwise allege that the stop itself was illegal. In his reply, plaintiff claims that no one "made a charge or claim on the actions they claimed was the reason for the stop," and he therefore denies that the stop was legal (Dkt. No. 35 at 6). As already noted, though, a party cannot amend his pleadings through briefing. *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184–85. This allegation is not included in the amended complaint.

own account, Tharp continued to ask him questions and gave him multiple opportunities to cooperate and comply. Instead of complying, plaintiff accused Tharp of trespassing. Then, when Tharp lawfully asked plaintiff to get out of the vehicle and plaintiff refused to do so, his conduct created probable cause for his arrest. *See, e.g.*, *Byndon v. Pugh*, 350 F. Supp. 3d 495, 510 (N.D.W. Va. 2018) (holding that there was probable cause to arrest motorist where, during traffic stop, he "repeatedly refused to produce his license, registration, and proof of insurance[, and] refused to step out of his vehicle" after the officer asked him to do so). As defendants correctly note, a driver in Virginia is required to carry and show his driver's license when asked by law enforcement, *see* Virginia Code § 46.2-104, and a failure to do so constitutes a traffic violation. A law enforcement officer may arrest a person who has committed a traffic infraction because they are misdemeanors for arrest purposes, Virginia Code § 46.2-937, and, if the officer reasonably believes that person will disregard a summons—likely on the facts here—he my arrest instead of just issuing a citation. Va. Code §§ 46.2-936, 46.2-940.[8]

Thus, because there was probable cause to arrest, Tharp had authority to use reasonable force to seize the plaintiff from the vehicle and arrest him. *See Smith v. Ball State Univ.*, 295 F.3d 763, 769 (7th Cir. 2002) (holding that the forcible removal of the occupant from a vehicle during an investigatory stop was reasonable). Tharp's threat to break the window was not unlawful or unreasonable under the circumstances, which included that plaintiff had continuously refused to cooperate and was refusing to exit his vehicle. Immediately thereafter, plaintiff fled and no other direct interactions with Tharpe are alleged.

---

[8] Tharp also may have reasonably believed plaintiff had violated Virginia Code § 18.2-460, which prohibits obstructing a law enforcement officer's exercise of his duties. *See Coffey v. Morris*, 401 F. Supp. 2d 542, 547–48 (W.D. Va. 2005) (where officer ordered person to remain in vehicle and she walked away toward house, he had reasonable belief that she had violated Virginia's obstruction statute); *see also Cleary v. Green*, Civil No. CCB-07-1202, 2008 WL 4900548, at *3 (D. Md. Nov. 6, 2008) (holding officer had probable cause to arrest driver who refused to exit vehicle as instructed because he reasonably believed that refusal violated Maryland law).

11

On the facts alleged in the amended complaint, then, no Fourth Amendment violation resulted from Tharp's conduct during the initial stop, which constituted the only specific allegations against Tharp aside from the malicious prosecution claim.[9]

### D. Plaintiff Fails to State a Constitutional Claim Against Schienschang.

The factual matter alleged in the amended complaint is insufficient to analyze any Fourth Amendment claim against Schienschang. Instead, the court concludes that any such claim against Schienschang fails because plaintiff does not include sufficient factual matter to plausibly state a valid claim against him. Plaintiff states that Schienschang's vehicle "did collide several times and cause damage to his car and [plaintiff's] truck. Then, once plaintiff was stopped, Schienschang struck and shattered the truck's window and order[ed] [plaintiff] out."

As to the allegation that the two vehicles collided, nowhere in the amended complaint does plaintiff allege that Schienschang purposefully or intentionally collided with his vehicle; accordingly, there are insufficient facts alleged to deem this an action of force applied by Schienschang.[10]

The next allegation in the complaint is that plaintiff "complied" with the order to get out of the vehicle and then was "assaulted and falsely arrested," but plaintiff does not identify

---

[9] Plaintiff also makes the assertion that Tharp "attacked" him and "attempted to rape" him "by non consensual intercourse attempted forced commerce," which is a strange claim given that plaintiff never left his vehicle. This allegation appears to be based on Tharp's continued questioning of plaintiff despite the fact that Tharp "accepted" a contract that plaintiff handed to him during the course of the stop. (*See generally* Am. Compl., Dkt. No. 21.) In any event, there are no other facts to support the assertion, and the court does not consider it further.

[10] It is also possible that, even if hitting plaintiff's vehicle was intentional, any such force could have been "objectively reasonable" as an effort to arrest an uncooperative driver who fled during a traffic stop and failed to stop despite being pursued by multiple law enforcement officials. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372 (2007) (holding that no Fourth Amendment violation occurred where the plaintiff was driving dangerously while being pursued by numerous police cars and a police officer terminated the car chase by ramming his bumper into the plaintiff's vehicle). Moreover, as already noted, it does not violate the Fourth Amendment to forcibly remove a driver from his car if he has been uncooperative throughout a traffic stop and refused orders to exit the vehicle. *See supra* at Section II.C.

Schienschang as the officer who assaulted him, nor explain what force or specific actions he believes constituted an assault. He also refers to unspecified "excessive force by assault by Officers after affiant complied with order to exit and kneel on the ground, harm was done to the affiant's body straining his back, scraping his legs and causing a hernia to his side." (Am. Compl. 4.) Again, he does not identify Tharp or Schienschang as one of the "Officers" that used excessive force, nor does he identify with any particularity what type of force was used or what any officer did that he believes was unreasonable under the circumstances. Although a complaint "does not need detailed factual allegations," a plaintiff's pleading obligation "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. Plaintiff has not met his obligation, because he simply states that excessive force was used, and fails to allege factual matter to support that conclusion. For all of these reasons, plaintiff's Fourth Amendment excessive force claims against Schienschang will be dismissed without prejudice.

**E. Plaintiff Has Not Sufficiently Alleged A Malicious Prosecution Claim.**

Lastly, in a single sentence at the end of his amended complaint, plaintiff tries to assert what the court construes as a malicious prosecution claim. Specifically, he states that defendants swore "10 false charges," which constituted "slander and liable under oath by using false and fictitious names for affiant in their complaints." (Am. Compl. 4.) No additional factual detail is given.

Again, plaintiff's conclusory statement that ten charges against him were false is wholly unsupported by any facts. Moreover, as already noted, plaintiff was in fact either found guilty or pleaded guilty to at least some of the charges against him. With regard to any other charges against him that were dismissed or of which he was acquitted, he has not alleged adequate facts to state a malicious prosecution claim. "A 'malicious prosecution claim under § 1983 is properly

13

understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647. Moreover, to succeed on a claim based on allegedly false statements made by the defendants, a plaintiff generally would have to show that defendants deliberately or with a "reckless disregard for the truth" made materially false statements in swearing out charges against him. *Cf. Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (same as to affidavit used to obtain arrest warrant). A conclusory statement that unspecified charges against him were "false," without any supporting detail, does not suffice to state a claim. In short, his complaint wholly fails to adequately allege sufficient facts to support a malicious prosecution claim pursuant to Section 1983, and those claims will be dismissed without prejudice.[11]

### III. CONCLUSION

Because plaintiff's amended complaint fails to state a constitutional deprivation actionable under § 1983 against either defendant, defendants' motion to dismiss will be granted and the amended complaint will be dismissed. The dismissal is without prejudice to plaintiff's ability to file a second amended complaint if he can remedy the deficiencies identified in this opinion. Any second amended complaint must be filed within thirty days.

---

[11] Moreover, such a claim cannot be based on the charges on which he was convicted because those have not "terminated in plaintiff's favor." *Evans*, 703 F.3d at 647.

15

To the extent his complaint is intended to assert any related state-law claims, they likewise are dismissed without prejudice because the court declines to exercise jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3).

An appropriate order will be entered.

Entered: June 16, 2020.

/s/ *Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge